## IN RE O'KEEFE.

(No. 4,164.)

(Submitted June 28, 1918. Decided October 7, 1918.)

[175 Pac. 593.]

*Attorneys—Disbarment—Deceiving Court—Giving False Testimony—Defenses.*

Attorneys—Disbarment—Deceiving Court—False Testimony.
    1. *Held,* that an attorney who testified at a divorce proceeding that the defendant was insane at the time he entered into the marriage contract, although he had himself advised the marriage and knew that he was competent, was guilty of an attempt to deceive the trial court and merits disbarment.

Same—Deceiving Court—False Testimony—Defenses.
    2. Where an attorney is shown to have knowingly and willfully testified falsely to aid a litigant in attempting to establish a baseless claim, the fact that the trial court did not believe but rejected his testimony is no defense in a proceeding for his disbarment under a charge that he attempted to deceive the court.

    [As to disbarment of attorneys, causes and proceedings therefor, and the power of courts to disbar, see note in 95 Am. Dec. 333; 45 Am. St. Rep. 71.]

---

*Resigned October 25, 1918.
†Appointed November 14, 1918, to serve unexpired term of Associate Justice Sydney Sanner.

DISBARMENT proceedings against R. E. O'Keefe, an attorney. Judgment of disbarment.

*Mr. S. C. Ford,* Attorney General, and *Mr. Frank Woody,* Assistant Attorney General, for the Prosecution; *Mr. Moody* argued the cause orally.

*Mr. C. B. Nolan,* for Accused, argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Proceeding on the complaint of the attorney general against R. E. O'Keefe, an attorney admitted to practice in this state, accusing him of unprofessional conduct, and asking that he be disbarred. When the issues were made up, the court appointed C. A. Spaulding referee to hear the testimony and report the same, together with his findings of fact and his conclusions of law. The original complaint contained one count. During the course of the proceeding it was amended by the addition of a second count. The evidence submitted at the hearing was not directly relevant to the charge made in the first count. The referee therefore disregarded the first count, found upon the issues tendered by the second, and made his report accordingly. The substance of the charge in it is the following: That O'Keefe violated his oath as an attorney, and was guilty of unprofessional conduct, in that, on or about May 21, 1917, in an action then pending in the district court of Blaine county, wherein Elda O'Malley was plaintiff and Patrick H. O'Malley was defendant, one issue joined by the pleadings—of which O'Keefe had knowledge—was whether the said Patrick H. O'Malley was on October 2, 1915, at the time of his marriage to Elda O'Malley, then Elda Sharpless, insane to such an extent as to be incapable of entering into a marriage contract; that said action was brought on for trial in that court on May 21, 1917, before Honorable W. B. Rhoades, Presiding Judge, sitting without a jury; that O'Keefe was called and sworn as a witness, and tes-

tified during the trial; that, well knowing and believing that the defendant O'Malley was not at the time of his marriage so far insane and mentally deranged as to be incapable of entering into a marriage contract, he testified that he knew that O'Malley was insane, with the purpose and intent of deceiving the court and inducing the presiding judge to believe that O'Malley was incapable of entering into a marriage contract. The referee made special findings of fact, the effect of which is that O'Keefe is guilty as charged, and recommended that he be disbarred from practicing as an attorney and counselor in this jurisdiction. After a careful review of the large volume of evidence submitted at the hearing before the referee, we have concluded that it fully supports his findings and that his recommendation should be adopted. The propriety of our conclusion will be made apparent by a brief reference to some of the more salient parts of the evidence.

For several years prior to the fall of 1915 the accused and [1] Dr. O'Malley, a practicing physician, both resided at Chinook, in Blaine county, and were intimate friends. Dr. O'Malley was a bachelor. During the fall of that year he became somewhat mentally deranged, his condition being manifested by groundless fears entertained by him that he was about to suffer injury at the hands of some person or persons in the community. In a measure he lost interest in his practice and to some extent neglected it. He was advised by the accused that, if he would get married and establish a home, he would recover his mental balance and become fully restored to his normal condition. Elda Sharpless, who was then employed in the local telephone exchange, was an intimate friend of both the accused and Dr. O'Malley. The accused suggested to Dr. O'Malley that Miss Sharpless would make him a suitable wife and by persuasion induced him to agree to marry her. Having obtained Dr. O'Malley's consent to do so, the accused sought out Miss Sharpless and arranged for an interview between her and Dr. O'Malley. This occurred on October 2. The result was an agreement between them to be married immediately.

Thereupon the accused accompanied them to Havre, in Hill county, where they were married. The marriage proved unhappy from the beginning. Indeed, the evidence tended to show that it was never consummated by cohabitation between the parties, and that Dr. O'Malley soon compelled his wife to leave his home. Thereafter the wife brought an action for separate maintenance on the ground of desertion. As one of his defenses to the action, Dr. O'Malley interposed a counterclaim demanding an annulment of the marriage, on the ground that he was wholly incompetent to enter into the marriage contract with the plaintiff. At the trial in May, 1917, the accused was one of the principal witnesses called by Dr. O'Malley to establish his want of capacity. In response to inquiries by counsel, he testified without explanation or qualification that he knew that at the time of the marriage Dr. O'Malley was insane. At the hearing before the referee he admitted that he had so testified. He stated further that when he advised the marriage he was of the opinion that Dr. O'Malley was competent; that otherwise he would not have given the advice he did; that he gave his evidence at the trial without qualification as he did, because he was not asked to state how he desired his statement to be understood; and that, if he had thought it would be understood to mean that Dr. O'Malley was not fully competent to contract the marriage, he would have elaborated and explained it. That he had ample opportunity to do this, but failed to improve it, however, is shown by the following excerpt from his cross-examination during the trial. He was questioned by Mr. Hurd, one of counsel for the plaintiff, and gave answer as follows: "Q. Do you mean to tell this court that, knowing a man was insane, you would still advise him to get married? A. I am not telling the court anything. I made the statement that I did so advise him." When we recall the fact that he knew that Dr. O'Malley was seeking an annulment of the marriage on the ground that he was incompetent, that he had been called as a witness to establish the alleged incompetency, and that he did not believe at the time that Dr. O'Malley

was incompetent, we are forced to the conclusion that, in answering the question put to him by Mr. Hurd as he did, he was fencing to avoid any explanation. The conclusion by the referee that his purpose was to deceive the court is thus fully sustained.

Counsel for the accused contends that, when he had answered [2] truthfully the questions put to him, his duty was fully discharged, and that he would not have been permitted to express an opinion as to whether Dr. O'Malley was competent to contract the marriage if he had attempted to do so, because this would have violated the rule of evidence that a witness may not express an opinion on the ultimate fact which is to be found by the court. It is sufficient answer to this to say that if the accused had truthfully informed defendant's counsel, before he was called, of the condition of Dr. O'Malley's mind, he doubtless would not have been called. In other words, he was not under compulsion to testify as he did. He cannot allege the technical rule referred to by counsel to exculpate himself from an apparently deliberate purpose to practice deceit upon the court in bolstering up a ground for the relief alleged by the defendant, which by his own admission at the hearing by the referee he knew did not exist. Nor is he aided by the fact that the court rejected his testimony in finding that Dr. O'Malley was competent.

That the conduct of the accused justifies an order of disbarment cannot be questioned. Subdivision 5 of section 6393 of the Revised Codes is broad and comprehensive. It was clearly intended by the legislature in enacting it to include any course of conduct by an attorney disclosing moral obliquity and dishonesty rendering him unworthy of the privilege of practicing law. A character for honesty and integrity is as necessary, to justify his retention of the privilege after he has acquired it, as it was to acquire it in the first place; and when his conduct is such that he has forfeited his right to the confidence of the public, he has forfeited his right to the privilege also. A man cannot be dishonest as an individual and at the same time

honest as a lawyer. It is not possible to distinguish between the man as an individual and a man as a lawyer; and when he reaches the point where he is ready, as a witness, knowingly and willfully to aid a litigant to establish a baseless claim, he is no longer worthy to be a member of the honorable profession to which he belongs. Courts are instituted to administer justice, as near as may be. The office of the lawyer is to aid them in the exercise of this high function; and when he fails in the duty which he thus owes to the courts, he forfeits the privilege which has been accorded him.

The judgment of the court is that R. E. O'Keefe be removed from his office as attorney and counselor at law, and that his name be stricken from the roll.

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.

Rehearing denied October 23, 1918.